**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION**

| | | |
|---|---|---|
| **LAUREN GREEN,** | ) | |
| **MICHAEL PARSLEY,** | ) | |
| **MARY RAGSDALE,** | ) | |
| **ALLLEN GIBSON,** | ) | |
| **GARY ZECK,** | ) | |
| **ASHLEY KILKELLY,** | ) | |
| **CHRIS STEVENSON,** | ) | |
| **CHRIS WATSON, and** | ) | |
| **SAMANTHA WILLIAMS,** | ) | |
| | ) | |
| **PLAINTIFFS** | ) | **CIVIL ACTION** |
| | ) | **NUMBER:** 3:14-CV-439-H |
| **v.** | ) | |
| | ) | **JURY DEMAND** |
| **EDDIE MERLOT FINE** | ) | |
| **DINING, INC.,** | ) | |
| | ) | |
| **DEFENDANT** | ) | |

**COLLECTIVE ACTION AND
CLASS ACTION COMPLAINT**

Come now the Plaintiffs, Lauren Green, Michael Parsley, Mary Ragsdale, Allen Gibson,

Gary Zeck, Ashley Kilkelly, Chris Stevenson, Chris Watson, and Samantha Williams, by and

through their undersigned counsel, and file this collective action and class action and, in support

thereof, state as follows:

**INTRODUCTION**

1.    This action is brought to recover unpaid compensation, in the form of unpaid wages and

overtime, owed to the Plaintiffs, similarly-situated Servers, Cocktail Servers, Bartenders,

and other tipped, non-management employees of Defendant pursuant to the Fair Labor

Standards Act ("FLSA") and the Kentucky Wages and Hours Act ("KWHA").  Since

January 6, 2011, Defendant has had a uniform policy and practice of requiring tipped

employees to participate in an invalid tip pool and to share tips with non-tipped employees, including Managers and non-serving, non-tipped Kitchen Staff.  Defendant also has a uniform policy which requires tipped employees to spend more than 20 percent of their time performing non-serving, non-tipped duties while being paid less than minimum wage.   Defendant permits Servers, Cocktail Servers, Bartenders, and other tipped, non-management employees to perform work while off the clock.   This practice has increased since August 2013, when Defendant announced that the majority of employees would not be allowed to work more than twenty-eight (28) hours per week.

2.      This action is brought pursuant to the FLSA, 29 U.S.C. §201 *et seq.*, for equitable and declaratory relief and to remedy violations of the wage provisions of the FLSA by Defendant.  Plaintiffs request certification as a collective action pursuant to § 216(b) on behalf of all individuals who were employed by Defendant in its Louisville, Kentucky restaurant as Servers, Cocktail Servers, Bartenders, or any other tipped, non-management position.  Defendant has deprived named Plaintiffs, similarly-situated Servers, Cocktail Servers, Bartenders, and other tipped, non-management employees of their lawful wages.

3.      This action is also brought pursuant to the KWHA, Kentucky Revised Statutes 377.010 *et seq.*, for equitable and declaratory relief and to remedy violations of the wage provisions of the KWHA by Defendant.  Plaintiffs request certification as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all individuals who were employed by Defendant in its Louisville, Kentucky restaurant as Servers, Cocktail Servers, Bartenders, or in any other tipped, non-management position.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action *pursua*nt to 28 U.S.C. §1331. Venue is proper in the Western District of Kentucky pursuant to 28 U.S.C. §1391(b). Defendant is subject to personal jurisdiction in the State of Kentucky for the purpose of this lawsuit.

5.     This Court's jurisdiction extends to Plaintiffs' related state law claims through supplemental jurisdiction because Plaintiffs' wage and hour claims arise from a "common nucleus of operative facts."  The United States District Court is an appropriate forum with original jurisdiction according to KRS 337.385(2).

## PARTIES

6.     Defendant Eddie Merlot Fine Dining, Inc. ("Merlot") is a corporation which conducts business in the State of Kentucky.  It has a restaurant operating in Louisville, Kentucky (hereinafter "Louisville restaurant").

7.     Plaintiff Lauren Green resides in Louisville, Kentucky.  From approximately January 6, 2011 until the present, she has been employed by Defendant as a Bartender in the Louisville restaurant.

8.     Plaintiff Michael Parsley resides in Louisville, Kentucky.  From approximately January 6, 2011 until the present, he has been employed by Defendant as a Bartender in the Louisville restaurant.

9.     Plaintiff Mary Ragsdale resides in Louisville, Kentucky.  From approximately February of 2011 until July of 2013, she was employed by Defendant as a Cocktail Server in the Louisville restaurant.

10.     Plaintiff Allen Gibson resides in Louisville, Kentucky.  From approximately January 6, 2011 until the present, he has been employed by Defendant as a Server in the Louisville restaurant.

11.     Plaintiff Gary Zeck resides in Louisville, Kentucky.  From approximately January 6, 2011 until the present, he has been employed by Defendant as a Server in the Louisville restaurant.

12.     Plaintiff Ashley Kilkelly resides in Louisville, Kentucky.  From approximately January 6, 2011 until the present, she has been employed by Defendant as a Server and a Bartender in the Louisville restaurant.

13.      Plaintiff Chris Stevenson resides in Louisville, Kentucky.   From approximately November of 2011 until February 18, 2013, he was employed by Defendant as a Server in the Louisville restaurant.  From time to time, Stevenson would act as a shift manager for the restaurant when regular managers were not available to work.

14.     Plaintiff Chris Watson resides in Louisville, Kentucky.  From approximately November of 2011 until March of 2014, he was employed by Defendant as a Bartender in the Louisville restaurant.

15.     Plaintiff Samantha Williams resides in Louisville, Kentucky.   From approximately January 6, 2011 until the present, she has been employed by Defendant as a Server in the Louisville restaurant.

16.     At all times material to this action, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce as defined by §203(s)(1) of the FLSA.

17.     At all times relevant to this action, Defendant has been an "employer" of the Plaintiffs as defined by §203(d) of the FLSA and KRS 337.010(1)(d).

18.     At all times material to this action, Plaintiffs, similarly-situated Servers, Cocktail Servers, Bartenders, and other tipped, non-management employees have been "employees" of Defendant as defined by §203(e)(1) of the FLSA and KRS 337.010(1)(e). Plaintiffs also have worked for Defendant within the United States within five years preceding the filing of this lawsuit.

## FACTS

### Defendant requires Plaintiffs and other similarly-situated employees to pool their tips and to share those tips with Sales Managers and Kitchen Staff.

19.     Plaintiffs, similarly-situated Servers, Cocktail Servers, Bartenders, and other tipped, non-management employees of Defendant's Louisville restaurant are paid a reduced minimum wage below the Federal minimum wage and the Kentucky minimum wage.

20.     Plaintiffs and similarly-situated Servers employed by Defendant in its Louisville restaurant are paid an hourly cash wage of approximately $2.13 per hour.

21.     Plaintiffs and similarly-situated Cocktail Servers employed by Defendant in its Louisville restaurant are paid an hourly cash wage of approximately $2.13 to $5.15 per hour.

22.     Plaintiffs and similarly-situated Bartenders employed by Defendant in its Louisville restaurant are paid an hourly cash wage of approximately $2.13 per hour.

23.     Defendant requires Plaintiffs and all other Servers, Cocktail Servers, Bartenders, and tipped, non-management employees to share tips with other employees by requiring them to participate in a tip pool. The tip pool includes employees who are paid an hourly wage rate which is subsidized by Plaintiffs' tips and who do not customarily and regularly

receive tips.  Participation in this tip pool is a condition of employment and is therefore mandatory and not voluntary.  Defendant requires Servers, Cocktail Servers, Bartenders, and other tipped, non-management employees in its Louisville restaurant to pay a fixed percentage of their sales ("tip out") to part of the Kitchen Staff on every shift.  Defendant requires Servers, Cocktail Servers, Bartenders, and other tipped, non-management employees in its Louisville restaurant to pay a fixed percentage of their sales to Sales Managers ("tip out") which amount is calculated from sales to "large parties."   Large parties range from 20 to more than100 guests and are regularly and frequently scheduled in the Louisville restaurant.

24. Kitchen Staff in Defendant's Louisville restaurant are non-service, non-tip employees who are not expected to interact with customers.  Rather, Kitchen Staff prepare food in the kitchen and away from customers. Some of the Kitchen Staff are misclassified as "Food Runners" and the majority of their job duties are to help Kitchen Staff plate and prepare food within the kitchen.  Many of the Food Servers do not leave the kitchen at all during a shift and do not deliver food to customers' tables or assist the Servers in any way which would justify receiving a portion of the gratuity left by customers for tipped employees.  Food Runners do not customarily and regularly receive more than thirty dollars a month in tips except through the Defendant's tip pool. Therefore, Food Runners cannot legally receive a share of the Servers' tips, the Cocktail Servers' tips, or the Bartenders' tips.

25. Defendant's Sales Managers in its Louisville restaurant receive a portion of the tips received by Plaintiffs and other similarly-situated employees.  Defendant's Sales Managers in its Louisville restaurant hire and fire Plaintiffs and similarly-situated

employees, maintain employment records regarding Plaintiffs and similarly-situated employees, and establish the rate and method of wage payment to Plaintiffs and similarly-situated employees. As a result, Sales Managers are agents of Defendant who play an integral part in the operations of Defendant and are themselves considered to be an "employer" under the FLSA and the KWHA based on the totality of the circumstances. Defendant is not legally permitted to take employees' tips.

26. At the end of each shift, Defendant totals Servers' tips, Cocktail Servers' tips, and Bartenders' tips, and requires Servers, Cocktail Servers, and Bartenders to pay a portion of those tips to non-serving, non-tip employees, including the Sales Managers and part of the Kitchen Staff. This tip out amount is a set percentage which is determined by Defendant and is not voluntary or discretionary to the Servers, Cocktail Servers, and Bartenders. Defendant's Employee Handbook, which is provided to employees, explains the formula Defendant uses to calculate the tip out including the percentage assessed against the employees' sales. Defendant requires all Servers, Cocktail Servers, and Bartenders to pay this tip out before they receive their tips. Servers, Cocktail Servers, and Bartenders do not receive their tips prior to paying the tip out and do not have any discretion to increase or decrease the amount of the tip out for any reason.

27. Defendant's inclusion of these non-serving, non-tip employees in its tip pool invalidates the tip pool, resulting in the misapplication of the tip credit, as well as the misappropriation of the Servers', Cocktail Servers', and Bartenders' tip earnings.

28. Defendant's total deductions from employees' tip income enrich Defendant by allowing it to pay a lower hourly wage to non-serving, non-tipped employees which increases its

wealth, elevating it beyond the approximate financial posture it would have enjoyed had it employed a valid tip pool and/or not employed any tip pool.

29.  Upon information and belief, Plaintiffs, similarly-situated Servers, Cocktail Servers, Bartenders, and other tipped, non-management employees are not compensated for the time spent at work waiting for the tip pool to be paid out.

**Defendant requires Plaintiffs and other similarly-situated
employees to perform non-serving, non-tipped duties
in excess of 20 percent of each shift.**

30.  Plaintiffs, similarly-situated Servers, Cocktail Servers, Bartenders, and other tipped, non-management employees are routinely required to report to work approximately one hour before Defendant opens its doors to begin serving customers.  During this time period, Plaintiffs, similarly-situated Servers, Cocktail Servers, and Bartenders, and other tipped, non-management employees are required to perform non-serving, non-tipped duties for more than one hour for each five hour shift worked.

31.  During these time periods, Plaintiffs, similarly-situated Servers, Cocktail Servers, Bartenders, and other tipped, non-management employees are required to perform non-serving, non-tipped duties; yet, they are only paid the reduced minimum wage of a tipped employee, approximately $2.13 per hour for Servers and Cocktail Servers and approximately $5.00 per hour for Bartenders.

32.  During this time period, Servers and Cocktail Servers are required to perform non-serving, non-tipped duties which include: brewing iced tea; cutting lemons; preparing coffee set ups, which involves retrieving drink containers, tea bags, and sugar from the back and mixing them; preparing milk for the espresso machine; filling ice bins with ice; distributing candles throughout the dining room; pulling stock from the dish area; slicing

lemons and limes for the day; filling sauce cups; folding at least 25 napkins at the beginning of the shift; washing windows; cleaning assigned sections of the restaurant; wiping down tables, the bar, chairs, window ledges, and baseboards;  and stocking the bar area and server stations with to-go bags, to-go cups, to-go silverware, napkins, paper towels, and any supplies that would be needed throughout the day.

33.    During this time period, Bartenders are required to perform non-serving, non-tipped duties which include: stocking beer and wine; filling bins with ice; preparing whole lemons for twists, cut lemons, cut limes, cut oranges, cut pineapple wedges, blueberries, strawberries, raspberries, cherries, luxardo cherries, cucumbers, olives, bleu cheese stuffed olives, mint, Demera syrup, and sangria; preparing fresh-squeezed juices, including orange juice, grapefruit juice, lemon and lime sour mix, and bloody mary mix; preparing pineapple infused vodka; wiping down the bar; wiping down the liquor bottles in the wells; cleaning the windows and doors; and sweeping and mopping; taking out trash; and stocking the bar area with to-go bags, to-go cups, to-go silverware, napkins, paper towels, and any supplies that would be needed throughout the day.  Bartenders are also utilized to witness the Managers' inventory of the liquor which occurs either before or after shifts.

34.    At the end of their shifts, Plaintiffs, similarly-situated Servers, Cocktail Servers, and Bartenders, and other tipped, non-management employees are required to perform non-serving, non-tipped duties for more than one hour for each five-hour shift worked.

35.    During this time, while Plaintiffs were performing non-serving, non-tipped duties, Plaintiffs, similarly-situated Servers, Cocktail Servers, and Bartenders, and other tipped, non-management employees are still paid only a tipped employee's cash wage:

approximately $2.13 per hour for Servers; approximately $5.15 per hour for Bartenders; or approximately $2.13 per hour for Cocktail Servers.

36.     During this time period, Servers and Cocktail Servers are required to perform non-serving, non-tipped duties including: polishing at least one rack of silverware; polishing at last one rack of wine glasses; polishing at least one rack of water glasses; setting up at least twenty-five (25) silverware set ups; polishing tables and lamps; wiping salt and pepper shakers; wiping down chairs and booths; dusting ledges and cleaning tables bases; and cleaning anything used, such as the espresso machine or tableside burners.  On most nights, Servers have to wait on the Kitchen Staff to adequately clean the silverware, water glasses and wine glasses which regularly takes at least 15 to 30 minutes or longer.  In addition, each server is also tasked with one of more specific assignments on any given night, which include (1) cleaning and stocking the merlot station, which involves wiping it down, stocking it with appetizer plates, silverware, bread and butter plates, and marking plates; stocking platinum club appetizers, postcards, comment cards and printer paper; (2) cleaning server alley computer areas and screens; stocking server alley with appetizer plates, bread and butter plates, and rolls of printer paper; (3) cleaning coffee area and espresso machine, which involved filling the machine with coffee beans, wiping down the area, stocking it with plates and doilies; (4) stocking cups and saucers; (5) cleaning, drying and restocking sugar caddies; (6) making plates for marking plates; dumping iced tea and cleaning iced tea machine; (7) cleaning and stocking to-go area, which involves wiping down shelves; cleaning and stocking butter towers; (8) cleaning and restocking refrigerators; (9) flipping chocolates and chocolate shavings for coffee service; (10) stocking and filling half & half, milk and whipped cream for coffee service;

10

(11) cleaning the Bananas Foster station, which involves cleaning the burners, flipping and filling the brown sugar, refilling the cinnamon, and wiping down the area as well as cleaning the burner tops and wiping bases inside and out; (12) wiping down tray jacks, which involves sending small trays through the dish washer, spreading out to dry overnight, and wiping down champagne buckets and stands; (13) polishing water pitchers and cleaning press pots; (14) cleaning all dessert menus; (15) cleaning and stuffing all check presenters; (16) distributing dessert menus and check presenters to all server stations; (17) cleaning the Coke machine, which involves disassembling and soaking nozzles in soda water overnight, restocking straws; (18) taking out the trash; (19) filling the ice bins with ice; (20) checking the dish area and pulling stock; (21) spreading trays out to dry; (22) polishing the ice maker; dumping coffee and iced tea; (23) recharging all candles; and (24) performing a final walk through of the restaurant.

37.   During this time period, Bartenders are required to perform non-serving, non-tipped duties which include: re-stocking beer and wine; filling bins with ice; storing any remaining lemons and limes; storing any remaining juices, sour mix or bloody mary mix; storing any remaining infused vodka; wiping down the bar; wiping down the liquor bottles in the wells; cleaning the windows and doors; sweeping and mopping the bar area; and taking out trash.  Bartenders are also utilized to witness the Managers' inventory of the liquor which occurrs both before and after a shift.

38.   Plaintiffs, similarly-situated Servers, Cocktail Servers, and Bartenders, and other tipped, non-management employees routinely spend substantial time, in excess of 20 percent of the time spent working on each shift, performing these non-serving and non-tipped duties.

11

39.   Plaintiffs and other similarly-situated employees should have been paid at least the minimum cash wage for the time spent performing these non-serving, non-tipped duties, whether at the beginning of the shift, at the end of the shift, or both.

40.   Defendant does not keep adequate records of the tip pool and the amounts of tips shared and redistributed as required by 29 U.S.C. §§ 211(c) and 215(a).  During August 2013, Defendant announced that Servers, Cocktail Servers, Bartenders, and other tipped, non-management employees would not be allowed to work more than twenty-eight (28) hours per week.  Upon information and belief, Defendant imposed this rule in order to avoid having to provide health insurance benefits to these employees.  Since at least January 1, 2014, Defendant has required employees to work off the clock in order to avoid reaching Defendant's twenty-eight (28) hour limit for these employees.  Defendant requires Servers, Cocktail Servers, Bartenders, and other tipped, non-management employees to report for their scheduled shifts but then makes them perform the preparatory work described in paragraphs 36 and 37, above without compensation.  Defendant requires these employees to work off the clock until such time as the employee has to place a guest's order.  Defendant requires Servers, Cocktail Servers, and Bartenders and other tipped, non-management employees to perform the end of shift work described in paragraphs 36 and 37 above without compensation.  Defendant also requires these employees to work off the clock after their final guest pays and leaves.  Defendant requires these employees to perform this preparatory and end of shift work, off the clock, in order to avoid Defendant's self-imposed twenty-eight (28) hour limit.

**Defendant retaliated against Plaintiff Allen Gibson after he
complained that Defendant's policies and practices were illegal.**

41.     Plaintiff Allen Gibson complained to supervisors and managers that the policies and practices utilized by the restaurant were illegal and was terminated because of those complaints.   Gibson was told he was terminated for failing to provide a discount to a group of customers.   However, that reason was pretext since other employees have done the exact same thing and Defendant was aware of that behavior, but those employees were not disciplined or terminated.

### PLAINTIFFS' COLLECTIVE AND CLASS CLAIMS

42.     Defendant's systems and practices relating to its invalid tip pooling/sharing arrangement have resulted in its misappropriation of tip monies and the non-payment of wages to Plaintiffs, similarly-situated Servers, Cocktail Servers, and Bartenders, and other tipped, non-management employees.   Defendant's systems and practices disqualify Defendant from claiming any FLSA and KWHA minimum wage exemptions.   These practices have existed since at least January 6, 2011.

43.     Defendant has failed to keep adequate records for the tip pool and the amounts of tips shared and redistributed as required by 29 U.S.C. §§ 211(c) and 215(a).

44.     Plaintiffs', and other similarly situated employees', forced participation in a tip pool violates KRS 337.065.

45.     Plaintiffs', and other similarly situated employees', forced tip out to Sales Managers and Kitchen Staff violates KRS 337.065.

46.     Since January 6, 2011, Defendant has improperly claimed the FLSA tip credit (29 U.S.C. § 203(m) and KRS 337.275) for the time spent performing non-serving, non-tipped duties.

13

47. Time spent on these non-serving, non-tipped duties is not occasional, incidental, or insignificant; rather it is substantial.

48. Defendant could have easily calculated the time spent on these non-serving, non-tipped duties, as they are performed at the beginning and the end of the Servers' shifts, the beginning and the end of the Bartenders' shifts, and the beginning and the end of the Cocktail Servers' shifts.  For the most part, these non-serving, non-tipped duties are not interspersed throughout the shift.

49. Defendant's failure to pay Plaintiffs, and other similarly situated employees, for all hours worked in non-tipped employment violates KRS 337.275.

50. Defendant's failure to pay Plaintiffs, and other similarly situated employees, for all hours worked violates KRS 337.020, 337.055, 337.060 and 337.275.

## DAMAGES

51. All Servers, Cocktail Servers, and Bartenders employed by Defendant in its Louisville restaurant have substantially the same duties and responsibilities.

52. Plaintiffs, similarly-situated Servers, Cocktail Servers, Bartenders, and other tipped, non-management employees in Defendant's Louisville restaurant are now suffering, and will continue to suffer irreparable injury from Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

53. Plaintiffs, similarly-situated Servers, Cocktail Servers, Bartenders, and other tipped, non-management employees in Defendant's Louisville restaurant have no plain, adequate or complete remedy at law to redress the wrongs alleged herein. This suit for lost overtime and wages, back-pay, and a declaratory judgment is their only means of securing adequate relief.

54.   Upon information and belief, Defendant has engaged in a widespread pattern and practice of violating the provisions of the FLSA and the KWHA by failing to pay Plaintiffs, similarly-situated Servers, Cocktail Servers, Bartenders, and other tipped, non-management employees in its Louisville restaurant in accordance with §207 of the FLSA and the KWHA.

55.   As a result of Defendant's violations of the FLSA, Plaintiffs,  similarly-situated Servers, Cocktail Servers, Bartenders, and other tipped, non-management employees in its Louisville restaurant have suffered damages by failing to receive compensation in accordance with §207 of the FLSA and the KWHA.

56.   Upon information and belief, Defendant is aware of the requirements of the FLSA, the KWHA, and corresponding regulations and of their own violations of the FLSA and KWHA since at least January 6, 2011.  Despite this knowledge, Defendant has failed to pay Plaintiffs, similarly-situated Servers, Cocktail Servers, Bartenders, and other tipped, non-management employees in its Louisville restaurant the amount of pay required by the FLSA and the KWHA.

57.   Upon information and belief, Defendant has not made a good faith effort to comply with the FLSA and the KWHA.

58.   Upon information and belief, Defendant has intentionally failed and/or refused to pay Plaintiffs, similarly-situated Servers, Cocktail Servers, Bartenders, and other tipped, non-management employees in its Louisville restaurant according to the provisions of the FLSA and the KWHA.

59.    Upon information and belief, Defendant's failure to compensate Plaintiffs, similarly-situated Servers, Cocktail Servers, Bartenders, and other tipped, non-management employees in its Louisville restaurant is willful and violates the FLSA and the KWHA.

60.    Plaintiffs, similarly-situated Servers, Bartenders, Cocktail Servers, and other tipped, non-management employees in its Louisville restaurant are entitled to recover liquidated damages in an amount equal to the amount of unpaid wages and benefits owed to them as well as prejudgment interest pursuant to 29 U.S.C. §216(b) and the KWHA, KRS 337.385.

61.    Defendant has failed to keep adequate records of the tip pool and the amounts of tips shared and redistributed as required by 29 U.S.C. §§ 211(c) and 215(a).   Plaintiffs, similarly-situated Servers, Cocktail Servers, Bartenders, and other tipped, non-management employees in its Louisville restaurant are also entitled to an award of attorney's fees pursuant to 29 U.S.C. §216(b) and KRS 337.385.

## COLLECTIVE AND CLASS ALLEGATIONS

62.    Plaintiffs file this action as a collective action and class action on behalf of all individuals who have been employed by Defendant in its Louisville restaurant as Servers, Cocktail Servers, Bartenders, and all other tipped, non-management employees.

63.    There are hundreds of similarly-situated Servers, Cocktail Servers, Bartenders, and other tipped, non-management employees of Defendant who have been improperly compensated in violation of the FLSA and the KWHA and who would benefit from the issuance of Court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. These similarly-situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.   Specifically, all Servers,

16

Cocktail Servers, and Bartenders who have been employed by Defendant in its Louisville restaurant and have not been properly compensated should be notified and would benefit from Court-supervised notice and the opportunity to join the present lawsuit.

64.    Plaintiffs, similarly-situated Servers, Cocktail Servers, Bartenders, and other tipped, non-management employees in Defendant's Louisville restaurant perform the same duties and responsibilities, are subject to Defendant's illegal pay practices, and are similarly-situated for purposes of their job duties.

65.    Plaintiffs, similarly-situated Servers, Cocktail Servers, Bartenders, and other tipped, non-management employees who elect to participate in this action for misappropriated tip monies, seek unpaid wages and overtime compensation, an equal amount of liquidated damages, attorneys' fees, and costs pursuant to 29 U.S.C. §216(b) and KRS 337.385.

66.    The provisions set forth in §207 of the FLSA apply to Defendant, to Plaintiffs, to all similarly-situated Servers, Cocktail Servers, Bartenders, and to all other tipped, non-management employees during their employment with Defendant in its Louisville restaurant.

67.    Plaintiffs, similarly-situated Servers, Cocktail Servers, Bartenders, and all other tipped, non-management employees of Defendant are engaged in interstate commerce and/or the production of goods for interstate commerce while working for Defendant.  Their interstate commercial activity includes, but is not limited to, serving customers who are traveling in interstate commerce, serving food that originates out of state, and processing credit card transactions that cross state lines.

68.     This action has been brought and may properly be maintained as a class action pursuant
to Federal Rule of Civil Procedure 23 on behalf of Plaintiffs and others similarly-situated
with a Class defined as follows:

> All individuals who have been employed by Defendant in its Louisville, Kentucky
> restaurant as Servers, Cocktail Servers, Bartenders, any other tipped employment
> position, or any non-management, tipped position since January 6, 2011.

69.     Members of the Class are so numerous that their individual joinder is impracticable.  The
proposed Class includes hundreds of current and former Class members.  The precise
number of Class members is unknown to Plaintiffs, but upon information and belief,
there are several hundred current and former employees.  The true number of Class
members is known by Defendant and they can be notified of the pendency of this action
by first class mail, published notice or email notice.

70.     There is a well-defined community of interest among members of the Class.  The claims
of the representative Plaintiffs are typical of the claims of the Class in that the
representative Plaintiffs and all Class members have been employed by Defendant, have
been required to participate in an involuntary tip pool, have been required to share tips
with non-serving, non-tipped employees, and have been required to work without
adequate pay while performing non-serving, non-tipped duties.  The factual basis of
Defendant's conduct is common to all Class members and has resulted in injury to all
Class members.

71.     The questions of law and fact in this case are common to all Plaintiffs and Class members
and include the following:

> a.  Did Defendant require Plaintiffs/Class members to share tips in an unlawful tip
> pool?

      b.  Did Defendant require Plaintiffs/Class members to share tips with non-tipped employees?

      c.  Did Defendant require Plaintiffs/Class members to engage in clean-up activities without pay?

72.    Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs have retained counsel with substantial experience in prosecuting wage and hour claims and class action claims.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class they represent and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to the interests of the Class.

73.    Plaintiffs and members of the Class have suffered and will continue to suffer harm and damage as a result of Defendant's conduct.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Absent a class action, the vast majority of the Class members would likely find the cost of litigating their claims prohibitive and would have no effective remedy at law.  Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants and will promote consistency and efficiency of adjudication.

## INDIVIDUAL CLAIMS (RETALIATION)

74.    Plaintiff Allen Gibson was terminated after he objected to, or refused to participate in, activities, policies, practices, or assigned tasks that he reasonably believed to be in violation of the FLSA and/or the KWHA in violation of 29 U.S.C. § 218c and KRS 337.990.

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly-situated Servers, Cocktail Servers, Bartenders, and all other tipped, non-management employees, and pursuant to §216(b) of the FLSA and KRS 337.385, pray for the following relief:

a. At the earliest possible time, that they be allowed to give notice, or that the Court issue such notice, to all Servers, Cocktail Servers, Bartenders, and all other tipped, non-management employees who have been employed by Defendant in its Louisville, Kentucky restaurant during the five years immediately preceding the filing of this suit, and to all other potential plaintiffs who may be similarly situated, informing them that this action has been filed, the nature of the action, and of their right to opt in to this lawsuit if they were not paid compensation and benefits for all hours worked pursuant to 29 U.S.C. §216(b); to certify Plaintiffs' class; to appoint Plaintiffs as Class Representatives; to appoint the undersigned counsel of record as Class counsel; and to require notice be sent to all potential class members employed by Defendant in its Louisville, Kentucky restaurant during the five years immediately preceding the filing of this suit;

b. An order awarding damages in the amount of their respective unpaid compensation and benefits, plus an equal amount of liquidated damages pursuant to 29 U.S.C. §216(b) and KRS 337.385 as well as prejudgment interest;

c. An order awarding reasonable attorneys' fees, including the costs and expenses of this action pursuant to 29 U.S. C. § 216(b) and KRS 337.385;

d. Such other legal and equitable relief including, but not limited to, any declaratory relief to which they may be entitled;

e. An order requiring Defendant to make whole Plaintiffs, all other

20

similarly-situated Servers, Cocktail Servers, Bartenders, and all other tipped, non-management employees of Defendant in its Louisville, Kentucky restaurant, by awarding them lost wages (plus interest) and liquidated damages; and

f.  Plaintiff further demands a jury to try all issues triable by a jury.

**JURY DEMAND**

**THE PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

DATED: June __, 2014

Respectfully submitted,

*/s/ H. Wallace Blizzard*
Robert F. Childs (ASB 2223-c60r)
H. Wallace Blizzard (ASB 8969-B59H)
Daniel E. Arciniegas (ASB 7809-D67A)
Wiggins, Childs, Quinn & Pantazis, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
205.314-0500

*/s/Garry R. Adams*
Garry R. Adams
Clay Daniel Walton & Adams PLC
462 South Fourth Street
Suite 101
Louisville, Kentucky 40202
502.561.2005

Counsel for Plaintiff

**DEFENDANTS' ADDRESS**:
Eddie Merlot Fine Dining, Inc.
455 So. 4th Street, #102
Louisville, Kentucky 40202