# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE
## CIVIL ACTION NO. 3:14-CV-439-RGJ

LAUREN GREEN, *et. al.*,                                                    PLAINTIFF

v.

PLATINUM RESTAURANTS
MID-AMERICA, LLC *d/b/a*
EDDIE MERLOT'S PRIME
AGED BEEF AND SEAFOOD.,                                                    DEFENDANT

## MEMORANDUM OPINION & ORDER

Plaintiffs Lauren Green, Michael Parsley, Mary Ragsdale, Allen Gibson, Gary Zeck, Ashley Kilkelly, Chris Stevenson, Chris Watson, and Samantha Williams ("Plaintiffs or Named Plaintiffs") move for class certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3). [DE 170]. Fully briefed, this matter is ripe adjudication. For the reasons below, Plaintiffs' motion for class certification, [DE 170], is **GRANTED**.

## I.      BACKGROUND

Plaintiffs brought this hybrid collective action and putative class action against the Defendant, Platinum Restaurants Mid-America, LLC ("Platinum"), for alleged violations of the Fair Labor Standards Act ("FLSA") and Kentucky wage and hour laws. [DE 1]. Platinum owns Eddie Merlot's Prime Aged Beef and Seafood Restaurant in Louisville Kentucky ("Eddie Merlot's"). [DE 145]. The Named Plaintiffs are all former or current Eddie Merlot's servers, cocktail servers, or bartenders. *Id.*

Among other alleged Kentucky wage and hour law and FLSA violations, Plaintiffs claim Platinum violated KRS 337.065 and KRS 337.385 by forcing Plaintiffs to participate in a mandatory tip pool. According to Plaintiffs, severs, cocktail servers, and bartenders were all

required as a condition of employment to participate in a tip pool established and controlled by Eddie Merlot's management in which they had to pay a certain percentage of the tips they received from customers to bussers, food runners, and sometimes managers. As a result, Eddie Merlot's allegedly illegally claimed a tip credit for each Plaintiff and paid them below minimum wage. Plaintiffs seek damages for lost wages in the amount of the tip credit claimed for each of them by Eddie Merlot's. Plaintiffs also seek an equal amount in liquidated damages and attorneys' fees under KRS 337. 385.

Based solely on the alleged illegal mandatory tip pool,[1] Plaintiffs seek class certification of "All individuals who have been employed by Defendant in its Louisville, Kentucky restaurant as servers, cocktail servers, and/or bartenders, at any time since January 1, 2011."

## II.    STANDARD

The Court has broad discretion in deciding whether to grant class certification. *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988). That said, "it must exercise that discretion within the framework of Rule 23." *Coleman v. General Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002). Under Rule 23 the moving party bears the burden of proving that the proposed class both satisfies Rule 23(a)'s requirements and fits into one of Rule 23(b)'s three subdivisions. *Coleman*, 296 F.3d at 446; Fed. R. Civ. P. 23(b); *see also Ball v. Union Carbide Corp.*, 385 F.3d 713, 727 (6th Cir. 2004). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Rule 23(a) has four requirements, which all must be satisfied:

---

[1] Plaintiffs concede that their other allegations—that they had to share tips with non-serving, non-tipped employees and required to do side work while being paid less than minimum wage—are not appropriate bases for Rule 23 class certification. [DE 174 at 12 ("The Plaintiffs have not sought certification of these issues and so the Court does not need to address them.)].

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;
and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

The Court's Rule 23 analysis must be "rigorous." *Dukes*, 564 U.S. at 350-51. "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* And "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160, (1982). However, "the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Glazer v. Whirlpool Corp. (In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.)*, 678 F.3d 409, 417-18 (6th Cir. 2012) (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012)). Thus, the Court's Rule 23 analysis must not include consideration of whether plaintiffs will ultimately prevail on the merits of their claims. *Id.* at 418 (citing *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 366 (4th Cir. 2004).

## III.    DISCUSSION

### A.  Rule 23(a)

1.  *Numerosity*

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no strict numerical test for determining impracticability of joinder." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079 (6th Cir. 1996). "However, sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d

565, 570 (6th Cir. 2004) (citing 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 3:5, at 243-45 (4th ed. 2002)).

Platinum does not contest numerosity as the proposed class includes about 200 former and current Eddie Merlot's servers, cocktail servers, and bartenders. The Court finds joinder of over 200 potential plaintiffs infeasible. Thus, Plaintiffs meet Rule 23(a)(1)'s requirement.

2. *Commonality*

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 349-50 (quoting *General Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157, 102 S. Ct. 2364, 2370 (1982)). Even so, this does not mean that plaintiffs may show commonality by asserting that they have all suffered a violation of the provision of the law. *Id.* at 350. Instead, their claims must rely on a common contention "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Thus, commonality depends not upon the "raising of common 'questions'—even in droves— but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (quoting Nagareda, 84 N.Y.U. L. Rev. 97, at 132). "The mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988).

Relying on *Whitlock v. FSL Mgmt., LLC*, No. 3:10CV-00562-JHM, 2012 U.S. Dist. LEXIS 112859 (W.D. Ky. Aug. 10, 2012), Plaintiffs argue that whether servers, cocktail servers, and

bartenders needed to participate in the tip pool is a common question of law or fact with a common answer. Platinum argues that the evidence, including the Plaintiffs' deposition testimony, shows that there is "no common answer to the tip pool issue," and this case is distinguishable from *Whitlock*.

a. There is a Common Answer to the Tip Pool Issue.

Platinum claims there is no common answer to whether participation in the tip pool was a condition of employment because the "Plaintiffs admit to a wide variety of circumstances under which they either retained their entire tip or shared it with other members of the service team in percentages different from the tip sharing arrangement offered by the restaurant." [DE 171 at 9]. Platinum cites Plaintiffs' depositions and tip pool spreadsheets that Platinum management used at the end of each shift to calculate and record the money contributed to the tip pool by each server, cocktail server, and bartender.

Platinum argues Plaintiffs voluntarily decided how much to contribute, if anything, to the tip pool, citing to tip adjustment forms and the Plaintiffs' deposition testimony. [DE 171 at 9]. Yet the record suggests that Defendant only made those forms available after this lawsuit was filed. [DE 174 Ex. 7 at 14-15, 75-76; Ex. 8 at 167-172; Ex. 9 at 253-54; Ex. 10 at 41-46; Ex. 11 at 124 -125; Ex. 12 at 55-61; Ex. 13 at 171-73; Ex. 14 at 271-73; Ex. 15 at 109-111, 124; Ex. 17 at 42-13; Ex. 18 at 128-129; Ex. 19 at 227-228; Ex. 16 at 80-82 (HR Manager Salon had not seen tip out adjustment)]; *see also* [DE 170 and Ex. 1 (Manoocheri had never seen or used a tip out adjustment sheet)]. Thus, those tip adjustment forms, and the Plaintiffs' testimony in which they admit to using them, do not affect commonality. Rather, there remains a single question, whether Eddie Merlot's had an unofficial policy conditioning employment upon servers', cocktail servers', and bartenders' participation in a management-controlled tip pool. Plaintiffs share the common

contention that the answer is "yes," and that they have all suffered the same resulting damage. For that reason, the tip adjustment forms, and the Plaintiffs' testimonies in which they admit to using them, do not prevent commonality.

Second, Platinum argues that the Plaintiffs failed to provide a common answer for why the tip pool spreadsheets reflected that they shared their tips in varying percentages. According to Platinum, without "such a common answer [the Plaintiffs'] case is not capable of classwide resolution." [DE 171 at 12]. Even so, the Plaintiffs need no common answer here. Plaintiffs' claims do not depend on whether they were all required to contribute some fixed percentage to the tip pool each shift. Instead, their claims turn on whether Platinum had an unofficial policy that forced their participation in the tip pool, to any extent, as a condition of employment. As a result, whether the contribution percentages sometimes changed makes no difference, so long as they were generally required to contribute. There may be varying answers to why one Plaintiff contributed a certain percentage on one shift, while another Plaintiff contributed a certain percentage on another shift. But this does not change Plaintiffs' primary contention, that Eddie Merlot's generally required its servers, cocktail servers, and bartenders to participate in a mandatory tip pool. This common question of fact renders an answer that drives this litigation's resolution. *See Whitlock v. FSL Mgmt.*, LLC, No. 3:10CV-00562-JHM, 2012 U.S. Dist. LEXIS 112859, at *22 (W.D. Ky. Aug. 10, 2012) ("The common question of fact with regard to this subclass is whether there was a common policy or practice of Defendants to require tipped employees of FSL and FSH to participate in mandatory tip pooling and sharing.").

b. *Whitlock* is Persuasive.

The Plaintiffs argue that this case is "virtually identical" to *Whitlock v. FSL Mgmt.*, LLC, No. 3:10CV-00562-JHM, 2012 U.S. Dist. LEXIS 112859 (W.D. Ky. Aug. 10, 2012), in which

certification was granted by Judge McKinley. Defendant claims that this case is *Whitlock*'s "opposite" because plaintiffs there offered "significantly stronger evidence" than Plaintiffs here, and "Platinum's business records of tip distribution combine with its written policy to defeat commonality." [DE 171 at 14].

In *Whitlock*, employees of three Louisville nightclubs sued the owners of those nightclubs, claiming that they were required to work off-the-clock without pay, violating KRS § 337.275. *Whitlock*, 2012 U.S. Dist. LEXIS 112859 at *2-*3. The plaintiffs also claimed defendants forced them to participate in a mandatory management-controlled tip pool, violating KRS § 337.065. *Id.* at *3. Plaintiffs sought class certification for all employees who worked without pay. *Id.* Plaintiffs also moved to certify a subclass that included all employees required to participate in the tip pool. *Id.*

Both sides produced evidence. To support certifying the tip pool subclass, plaintiffs produced ten employee affidavits, which stated the respective employees had to participate in the tip pool. *Id.* at *21. Defendants maintained they never required plaintiffs to participate in a tip pool and offered affidavits from current employees and three former employees. *Id.* at *22. The defendants also produced a written company policy stating that participation in the tip pool was voluntary. *Id.*

Relying exclusively on California caselaw, the defendants argued the conflicting employee declarations and written policy precluded a finding that there existed a common policy or practice requiring participation in the tip pool. *Id.* at *23. The court rejected the defendants' argument, finding the testimony from current employees and managers to be less credible due to bias. The Court also held that unlike California district courts, "the Sixth Circuit instructs that class certification is appropriate 'if class members complain of a pattern or practice that is generally

applicable to the class as a whole. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate.'" *Id.* (quoting *In re Whirlpool Corp. Front-Loading Washer Products Liability*, 678 F.3d at 420) (some internal quotation marks and citation omitted). Thus, even though some employees might have escaped participation in the tip pool, the subclass satisfied Rule 23(a)(2)'s commonality requirement. *Id.* The Court then certified the class and subclass. *See id.*

First, *Whitlock*, is on point. Like *Whitlock*, the Plaintiffs here allege they were required to participate in a management-controlled tip pool, violating KRS 337.065. Like *Whitlock*, Plaintiffs here offer ten employee affidavits affirming that they had to share tips per Eddie Merlot policy. [DE 187, Ex.'s 1-10]. Finally, like *Whitlock*, Defendant here offers contradictory testimony from several Platinum managers[2] and a written company policy stating that participation in the tip pool was voluntary. [DE 171, Ex.'s E, I; Ex.'s C-1, C-2].

Platinum's argument that the *Whitlock* plaintiffs' evidence was stronger because they "supported their class claims with specific evidence, like the minutes of the manager meetings" is misguided. [DE 171 at 13]. The *Whitlock* plaintiffs did provide the court with minutes of manager meetings. *Whitlock*, 2012 U.S. Dist. LEXIS 112859 at *18-*19. But those minutes only supported the plaintiffs' claims that they were required to work off the clock; they had nothing to do with the plaintiffs' tip pool subclass. *Id.* The only evidence mentioned by the Court about the tip pool subclass was the ten employee affidavits. *Id.* at *21-*24. Thus, the *Whitlock* plaintiffs offered no stronger evidence than the Plaintiffs offer here.

---

[2] Unlike *Whitlock*, where Judge McKinley found the current employee and management testimony biased because those employees and managers were still paid by the defendants, Thad Mattingly and Nancy Salon are former Platinum employees. The Court still finds their testimony biased. Management, whether current or former, is inherently aligned with the company, especially where management is being accused of participating actively in the alleged wrongdoing.

In fact, Plaintiffs here have offered even stronger evidence than *Whitlock*. Along with the ten declarations mentioned above, Plaintiffs also offer former manager Michael Manoocheri's declaration, in which he states "[p]articipation by servers, cocktail servers, and bartenders in the tip pool was a condition of employment at [Eddie Merlot's]." [DE 170, Ex. 1, ¶ 5]. Mancoocheri's deposition testimony casts some doubt upon his declaration.[3] [DE 183, Ex. 1, pp. 148-150]. But even Manoocheri's deposition testimony supports the Plaintiffs' contention that employment was conditioned upon tip pool participation. Manoocheri testified in his deposition that [the tip sharing agreement] was in the new hire packet . . ." and that "the new hire packet needed to be 100 percent complet[ed]" by new employees. *Id*. Thus, according to Manoocheri's deposition, upon being hired, new servers had to sign an agreement requiring them to participate in the tip pool. *Id*. Platinum argues testimony from "every Platinum manager deposed in the case" contradicts Manoocheri's declaration. That said, they attach only Thad Mattingly's and Nancy Salon's testimony to their response. [DE 171, Ex. E; Ex. I]. That testimony fails to contradict Manoocheri's deposition testimony. [DE 171]. Thus, the evidence supports finding that Eddie Merlot's had a common policy or practice of requiring servers, cocktail servers, and bartenders to participate in a mandatory tip pool as a condition of employment.

Second, Platinum's tip spreadsheets do not combine with its written policy to defeat commonality. Relying on California district court opinions—just like the *Whitlock* defendants—Platinum argues that the "Plaintiffs limited anecdotal evidence" about a *de facto* policy is insufficient when compared to Platinum's written policy and tip spreadsheets. The tip pool

---

[3] In his deposition, Manoocheri testifies that agreement to participate in the tip pool "wasn't necessarily a condition of hiring." [DE 183, Ex. 1, p. 148]. Instead, "[the tip pool agreement] was in the new hire paperwork. So we never crossed that bridge where somebody said, 'I don't want to sign this.' And then what do we do if they don't want to sign it, that was never discussed with -- with myself or -- my bosses, but it was -- it was that -- that form was in the new hire paperwork." [*Id.*].

spreadsheets— created, filled out, and controlled by management—reveal that on occasion some servers' contributions to the tip pool varied from the tip percentages enumerated in the tip agreement. [DE 171, Ex. C, pp. 28-29, 36-37, 42-43, 54-56; Ex. J, pp. 174-176, 177-181; Ex. K, pp. 112-116, 121-22; Ex. F, pp. 26, 30-31, 34 -35, 38- 42, 45-50]. Platinum's Louisville handbook also allegedly states that participation in the tip pool is voluntary, along with the tip pool agreement. [DE 171, Ex. C, pp. 18- 19].

To begin, California caselaw is not controlling, and this Court finds it unpersuasive as the *Whitlock* court did. Furthermore, while potentially relevant to the merits, some servers contributing varying percentages of their tips to the tip pool has little to do with commonality. Finally, like the defendant in *Whitlock*, Platinum's written policy stating the tip pool was voluntary does not outweigh the Plaintiffs' evidence suggesting otherwise. If a written policy destroyed commonality where plaintiffs alleged a *de facto* policy contrary to the written one, every company would be insulated from having to defend against such class claims by having an employee handbook.

Ultimately, this case is analogous to *Whitlock*. More importantly, whether Eddie Merlot's had an unofficial policy requiring its servers, cocktail servers, and bartenders to participate in a tip pool is a common question. Thus, Rule 23(a)(2)'s commonality requirement met.

3. *Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Claims are typical when "the class representative's claims arise from the same events, practice, or conduct, and are based on the same legal theory, as those of other class members." 5 Moore's § 23.24(2); *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). "Courts liberally construe the typicality requirement." *Hyland v. Homeservices of Am., Inc.*, No. 3:05-CV-612-R, 2008 U.S. Dist. LEXIS 90892, at *13

(W.D. Ky. Nov. 6, 2008) (quoting *In re Foundry Resins Antitrust Litigation*, 242 F.R.D. 393, 405 (S.D. Ohio 2007)).

Here, the Plaintiffs' claims are typical of the class because they are based on the same legal theory—Platinum violated KRS 337.065 by requiring servers, cocktail servers, and bartenders to participate in a tip pool. *See Whitlock*, 2012 U.S. Dist. LEXIS 112859, at *25 (W.D. Ky. Aug. 10, 2012). The Court has already addressed Platinum's argument that "Plaintiffs cannot establish a common policy in favor of their Tip Pool Claim" and found it lacking. [DE 171]. If the fact finder determines that Eddie Merlot enforced a mandatory tip pool, such a determination would further the interest of each class member. Thus, Rule 23(a)(3)'s typicality requirement is met.

4. *Adequacy*

Rule 23(a)(4) requires "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Class representatives must meet two criteria: "(1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083). Class counsel also must be "qualified, experienced and generally able to conduct the litigation." *Id.* (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000)). "This requirement insures that the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members." *Whirlpool Corp.*, 722 F.3d at 852-53. Ultimately, "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Young*, 693 F.3d at 543.

Comparing this case to *Gillian v. Starjem Rest. Corp.*, 2011 U.S. Dist. LEXIS 115833 (S.D.N.Y. Oct. 3, 2011), Platinum argues there is a conflict between the servers and bartenders. In *Gillian*, two restaurant servers sued their former employer, claiming that the defendant violated New York labor law by requiring them to include the restaurant's food expediter and kitchen stocker in an otherwise valid tip pool. *Gillian*, 2011 U.S. Dist. LEXIS 115833, at \*3. The plaintiffs moved to certify a class that included busboys and food runners, even though the busboys and food runners took turns working as the restaurant's food expeditor and kitchen stocker. *Id.* at \*19. The Court denied the plaintiffs' motion for certification because they sought relief that would adversely affect some individuals they purported to represent. *Id.* at \*20-\*21. The Court reasoned that "since the stocker position is rotated among busboys and since the expediter position is rotated among runners, plaintiffs cannot fairly represent busboys and runners, because busboys and runners also serve as stockers and expediters and thus have an interest in their participation in the tip pool being validated." *Id.* at \*20. Comparing them to the *Gillian* busboys and food runners, Platinum argues that the bartenders here "have an interest in participating in [the] tip pool and validating the tip pool." [DE 171 at 18].

The bartenders here are not like the busboys and food runners in *Gillian*. Plaintiffs here are not seeking to exclude the bartenders from an otherwise valid tip pool. Nor are Plaintiffs trying to recover from the bartenders' tips paid to the bartenders from the pool. Thus, Plaintiffs' claims, if successful, do not invalidate the bartenders' past, present, or future participation in the tip pool. Instead, if Plaintiffs prove the tip pool involuntary, the bartenders, like the servers, receive back wages. As a result, the bartenders', servers', and representative Plaintiffs' interests align—they wish the tip pool proven involuntary. There is no conflict here.

Furthermore, Plaintiff's counsel, having litigated many class action disputes, is generally able to conduct this litigation. [DE 171 at 14 n.6]. Platinum does not dispute opposing counsels' adequacy. As a result, Rule 23(a)(4)'s requirements are met.

## B. Rule 23(b)

The Plaintiffs must also show that action fits one of Rule 23(b)'s subdivisions. Plaintiffs argue this action fits subdivision (b)(3)'s requirements. Alternatively, Plaintiffs ague that they satisfy subdivisions (b)(1)(A) and (b)(1)(B). Certification is proper under Rule 23(b)(3). Thus, the Court need not address Rule 23(b)(1).

### 1. *Rule 23(b)(3)*

23(b)(3) requires "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). As a result, to qualify for certification under Rule 23(b)(3), the proposed class "must satisfy a two-part test of commonality and superiority and should only be certified if doing so would 'achieve economies of time, effort, and expense.'" *Cochran v. Oxy Vinyls LP*, No. 3:06CV-364-H, 2008 U.S. Dist. LEXIS 67389, at *38-39 (W.D. Ky. Aug. 29, 2008) (quoting *Sterling*, 855 F.2d at 1196).

#### a. Predominance

"Subdivision (b)(3) of Rule 23 parallels subdivision (a)(2) of Rule 23 in that both require that common questions exist, but subdivision (b)(3) contains a more stringent requirement that common issues 'predominate' over individual issues." *Whitlock*, 2012 U.S. Dist. LEXIS 112859, at *33 (citing *In re Am. Med. Sys., Inc.*, 75 F.3d at 1084). "To satisfy the predominance requirement in Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are

subject to generalized proof . . . predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564 (6th Cir. 2007) (internal quotation marks and citation omitted).

"There are no bright lines for determining whether common questions predominate." *In re Cardizem CD Antitrust Litigation*, 200 F.R.D. 297, 307 (E.D. Mich. 2001) (citing *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)). Instead, the Court must determine whether the questions common to the class are "at the heart of the litigation," *Powers v. Hamilton County Public Defender Com'n*, 501 F.3d 592, 619 (6th Cir. 2007), while keeping in mind "the mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Sterling*, 855 F.2d at 1197.

Relying on *England v. Advance Stores Co*., 263 F.R.D. 423 (W.D. Ky. 2009), Platinum argues individual—not common—questions predominate because Plaintiffs offer no evidence that the tip pool was mandatory. In *England*, an auto-parts store employee brought class claims against the store's parent company alleging an unofficial policy required employees at various locations to work off the clock and denied employees lunchbreaks. *England*, 263 F.R.D. at 425. The purported class included employees from 86 stores with different managers. *Id.* at 452. As evidence, Plaintiff offered only his "belief," based on experience at a single store. *Id.* at 431. The Court stated that Plaintiff "as a result will be forced to proceed store-by-store and employee-by-employee" to determine whether managers in the other 85 stores enforced the same unofficial policy. *Id.* at 452. The court thus found that individual issues would predominate and denied class certification. *Id.*

Here, instead of an ill-informed belief as in *England*, the Plaintiffs have the testimony of at least 11 people, including a former manager. Moreover, Plaintiffs claims implicate one store with common management. Thus, unlike *England*, individual issues need not predominate here.

Instead, a common question predominates here. Whether Eddie Merlot's had a *de facto* policy requiring participation in the tip pool is at the heart of this litigation. Some individual questions will likely need to be answered as the litigation unfolds. But a "'single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions.'" *Whitlock* *35 (quoting *Blihovde v. St. Croix County, Wis.*, 219 F.R.D. 607, 620 (W.D. Wis. 2003)). In other words, individual questions do not preclude certification, provided the common question predominates, like it does here. *See Whitlock v. FSL Mgmt.*, LLC, No. 3:10CV-00562-JHM, 2012 U.S. Dist. LEXIS 112859, at *37 (W.D. Ky. Aug. 10, 2012) (holding that the common question of whether defendants instituted a policy requiring tipped employees to participate in tip pooling and sharing predominated). Therefore, Rule 23(b)(3)'s predominance requirement is met.

### b. Superiority

Rule 23(b)(3) requires that the proposed "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The more common questions predominate over the case, "the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004). The Court must consider the following factors to determine whether a class action is the superior method for adjudicating the controversy:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and]

(D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

These factors support certification. First, the class members have no interest in individually controlling the prosecution of their claims. In fact, individual claims might be abandoned, given the relatively meager individual damages at stake for some potential class members. *See Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) ("Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action."). Second, while the Plaintiffs are involved in a FLSA collective action concerning the same alleged conduct, this does not prevent superiority. *Woods v. Vector Mktg. Corp.*, No. C-14-0264 EMC, 2015 U.S. Dist. LEXIS 118678, at *47-52 (N.D. Cal. Sep. 4, 2015); *Damassia v. Duane Reade*, Inc., 250 F.R.D. 152, 162 (S.D.N.Y. 2008); *Guzman v. VLM, Inc.*, No. 07-CV-1126 (JG)(RER), 2008 U.S. Dist. LEXIS 15821, at *31 (E.D.N.Y. Mar. 2, 2008) ("[T]here is no reason that FLSA's collective action procedure is incompatible with maintaining a state law class action over the same conduct."). Third, deciding whether there was an unofficial policy requiring tipped employees to participate in a tip pool would "'both reduce the range of issues and promote judicial economy.'" *Whitlock* at *39. (quoting *Dodge v. County of Orange*, 226 F.R.D. 177, 184 (S.D.N.Y. Jan. 27, 2005)). Finally, although there are inherent difficulties in managing a class action, those difficulties do not render class action inappropriate. Thus, Rule 23(b)'s superiority is met.

## C. Class Definition

"Although not specifically mentioned in [Rule 23], the definition of the class is an essential

prerequisite to maintaining a class action." *Brockman v. Barton Brands*, 2007 U.S. Dist. LEXIS 86732, 2007 WL 4162920 at *2 (W.D. Ky. 2007) (internal citations omitted). The definition must make it "administratively feasible for the court to determine whether a particular individual is a member." *Id.* The Plaintiffs propose the following class: "All Servers, Cocktail Servers, and Bartenders employed by the defendant in its Louisville restaurant since it opened on January 6, 2011." This definition is sufficient, given the allegations, and evidence suggesting that Eddie Merlot's claimed a tip credit for all their servers, cocktail servers, and bartenders, even though Eddie Merlot's had an unofficial policy requiring those servers, cocktail servers, and bartenders to participate in an involuntary tip pool.

## IV.     CONCLUSION

For the reasons stated above, and being otherwise sufficiently advised, **IT IS HEREBY ORDERED** that Plaintiffs motion for class certification, [DE 170], is **GRANTED**. Plaintiffs' counsel are appointed class counsel under Rule 23(g). The class is defined as follows:

> All Servers, Cocktail Servers, and Bartenders employed by the defendant in its Louisville restaurant since it opened on January 6, 2011.

**IT IS FURTHER ORDERED** this action is scheduled for a telephonic status conference before The Honorable Rebecca Grady Jennings, United States District Judge, on **November 18, 2019, at 11:00 a.m.** The Court will place the call to counsel. The parties are directed to contact Andrea Morgan by email at andrea_morgan@kywd.uscourts.gov with preferred contact numbers no later than three days in advance of the call.

cc:     Counsel